In the Matter of EXCAVATION CONSTRUCTION, INC., Debtor.

EXCAVATION CONSTRUCTION, INC., Appellant,

v.

MACK FINANCIAL CORPORATION, Appellee.

In the Matter of EXCAVATION CONSTRUCTION, INC., Debtor.

MACK FINANCIAL CORPORATION, Appellant,

v.

EXCAVATION CONSTRUCTION, INC., Appellee.

In the Matter of EXCAVATION CONSTRUCTION, INC., Debtor.

MACK FINANCIAL CORPORATION, Appellant,

v.

EXCAVATION CONSTRUCTION, INC., Appellee.

Bankruptcy No. 79–01535 G.
Civ. Nos. H–80–719, H–80–1611 and H–80–2143.

United States District Court, D. Maryland.

Jan. 8, 1981.

---

2. *See, e. g. In re Radtke*, 411 F.Supp. 105 (E.D. Wis.1976).

3. *See* Bankruptcy Rules 401, 601 and 11–44.

Nelson C. Cohen, Chevy Chase, Md., for debtor.

David F. Albright and Christopher R. West, Baltimore, Md., for creditor.

## MEMORANDUM AND ORDER

ALEXANDER HARVEY, II, District Judge.

Presently before the Court are three related bankruptcy appeals involving Excavation Construction, Inc., the debtor, (hereinafter referred to as "Excavation") and Mack Financial Corporation, the creditor (hereinafter referred to as "Mack"). In August 1975, Excavation, which is engaged in the construction business, bought six cement mixers, and in September 1978, it bought fifty dumptrucks. The mixers and trucks were covered by security agreements which have been assigned to Mack. Under these agreements, Excavation was to pay Mack $79,875.00 per month for the fifty trucks, and $8,754.11 per month for the six mixers (with the exception of the winter months of January through March when only nominal payments were due).

On September 4, 1979, Excavation filed a petition for arrangement under Chapter XI of the Bankruptcy Act in the United States Bankruptcy Court for the District of Maryland.[1] On September 12, 1979, Bankruptcy Judge Glenn L. Goldburn authorized Excavation to continue its operations as a debtor in possession. Following defaults under the security agreement covering the trucks, Mack filed in the Bankruptcy Court on November 8, 1979 a Complaint for Dissolution of Automatic Stay, seeking to retake possession of the trucks. Following defaults under the security agreements covering the mixers, Mack similarly sought to recover the mixers by a Complaint filed on March 4, 1980.

After a hearing on January 23, 1980, Judge Goldburn on January 28 entered an Order requiring the return to Mack of five of the fifty trucks and requiring Excavation to pay Mack $38,500 per month from November 8, 1979, for the use of the other forty-five. After another hearing on April 14, 1980, Judge Goldburn issued an Order on May 9, 1980, in which he required Excavation to pay Mack $3,150 per month for twenty-seven months for the use of the mixers, but he did not lift the stay regarding them.

In Civil No. H–80–719, Excavation has appealed the Order of January 28, 1980 requiring the return of five of the trucks. Excavation argues that Judge Goldburn erred in finding that Excavation did not need all fifty trucks in its business. Mack previously filed a motion to dismiss this

[1.] The petition having been filed on September 4, 1979, this case is governed in its entirety by the Bankruptcy Act of 1898, as amended, formerly codified as Title 11, United States Code. Public Law No. 95–598, 92 Stat. 2549, enacted Nov. 6, 1978, repealed the 1898 Act and enacted in its stead the new Bankruptcy Code, now codified as Title 11. The new Code became effective October 1, 1979. However, § 403(a) of Public Law No. 95–598 provides that cases begun before October 1, 1979 shall be governed in all respects by the old Act.

appeal for failure to submit briefs and transcripts on time, but this Court denied the motion in a letter opinion dated May 1, 1980.

In Civil No. H–80–1611, Mack has appealed the Order of May 9, 1980, pertaining to the mixers. Mack challenges Judge Goldburn's refusal to require the return of the mixers and also his computation of the amount which Excavation has been ordered to pay in order to keep them.

Civil No. H–80–2143, the third appeal before this Court, concerns a further Order of Judge Goldburn, also issued on May 9, 1980. That Order pertains to the trucks involved in Civil No. H–80–719. After Excavation had appealed the Order of January 28, 1980 to this Court, Judge Goldburn on May 9, 1980 changed that Order to require that monthly payments be made beginning on January 28, 1980, and not on November 8, 1979, as originally provided. Mack in Civil No. H–80–2143 has challenged Judge Goldburn's power to make such a change, arguing that the Bankruptcy Court lost jurisdiction over the case when the appeal was filed in this Court.

Briefs have been filed by the parties and oral argument has been heard in open court. For the reasons to be stated, the Order appealed in Civil No. H–80–719 will be affirmed. The Order appealed in Civil No. H–80–1611 will be affirmed in part, and remanded for further findings by the Bankruptcy Court. The Order appealed in Civil No. H–80–2143 will be reversed.

I

In Civil No. H–80–719, Excavation challenges Judge Goldburn's determination of fact that not all fifty trucks were essential to the operation of Excavation's business. It was on the basis of this determination that Judge Goldburn lifted the stay as to five of the trucks and permitted Mack to repossess them under the security agreements.

■ On appeal, the factual determinations of a bankruptcy judge are not to be disturbed unless they are "clearly erroneous." Rule 810, Bankruptcy Rules.[2] A finding of fact is clearly erroneous when, "although there is evidence to support it, the reviewing court is left with the definite and firm conviction that a mistake has been committed." *United States v. U. S. Gypsum*, 333 U.S. 364, 395, 68 S.Ct. 525, 541, 92 L.Ed. 746 (1948). Such is certainly not the case here. The record before this Court provides ample support for Judge Goldburn's finding, and this Court has not been left with the firm conviction that a mistake has been committed.

Excavation, which had the burden of defending the stay under Bankruptcy Rule 11–44(d), produced just one witness on the issue concerning the number of trucks needed in the business. That witness testified in vague and conclusory terms that all fifty would be needed to meet Excavation's obligations during the spring and summer of 1980. (Tr. I, 155 and 164.)[3] On the other hand, Mack produced summaries of daily use tickets showing that during three recent months only about one-half of the fifty trucks were in use on Excavation's jobs. (Plaintiff's Exhibits Nos. 5–12.) These summaries were admitted into evidence. (Tr. I, 88.)

Based on this evidence, it certainly was not clearly erroneous for Judge Goldburn to discount Excavation's vague predictions by ten percent in light of the concrete evidence

**2.** The Bankruptcy Rules governing this case are those adopted by the Supreme Court on April 24, 1973 under the old Act. Interim Bankruptcy Rules suggested by the Advisory Committee on Bankruptcy Rules to coordinate the application of the Bankruptcy Rules to cases brought under the new Code have been adopted by the Bankruptcy Court for the District of Maryland. However, these Interim Rules are not applicable here, as this case was brought under the old Act.

**3.** The transcript of the hearing held on January 23, 1980, which produced the Order issued January 28, 1980, and appealed in Civil No. H–80–719, will be referred to as "Tr. I." The transcript of the hearing held on April 14, 1980, which produced the Order issued May 9, 1980, and appealed in Civil No. H–80–1611, will be referred to as "Tr. II."

of much lower levels of past use. Judge Goldburn's Order appealed in Civil No. H–80–719 is therefore affirmed and all trucks should be returned.[4]

## II

Civil No. H–80–1611 presents several issues. Mack first challenges Judge Goldburn's finding that the mixers were necessary to Excavation's business. Secondly, Mack argues that since the value of the mixers as collateral was declining, it was improper to continue the stay. Mack next argues that as a general matter continuing the stay was improper since the stay modified its rights as a secured party. Finally, Mack challenges the figures and the arithmetic used by Judge Goldburn to calculate the payments which Mack was entitled to receive for Excavation's retention of the mixers.

Mack's challenge to the finding that the mixers were necessary to Excavation's business is based on the contention that the mixers were not being used directly by Excavation but instead by a related company, R & W Co., under an agreement whereby R & W delivered concrete to Excavation's jobs at a discount in return for the right to use Excavation's mixers to make the deliveries. Based on this fact, Mack makes two arguments. First, Mack asserts that the mixers cannot possibly be essential to the debtor's business if they are not being used *by it.* Secondly, it is claimed that Excavation had transferred ownership of the mixers and therefore had no standing to oppose Mack's assertion of rights under the security agreements.

■ As to the first point, this Court is not persuaded by Mack's attempted distinction between debtor's property used by the debtor and debtor's property used by another in the debtor's business. The authorities indicate that retained property must be essential to the debtor's continued successful

operation for a stay to be justified, but they do not specifically require property to be used *solely* by the debtor. *See, e. g., In Re The Red Carpet Corp.,* 11 Collier's Bankruptcy Cases 487 (N.D.Fla.1976); *Matter of Bateman Financial Corp.,* 5 Collier's Bankruptcy Cases 488 (M.D.Fla.1975); *In Re Jenifer Mall Corp.,* 2 Collier's Bankruptcy Cases 657 (D.D.C.1974). The record contains substantial support for Judge Goldburn's finding that the mixers were essential to the operation of the debtor's business, whoever was using them. The testimony indicated that they were being used constantly to deliver much needed concrete to Excavation's job site. (Tr. II, 73–77.)

As to the second point, this Court concludes that the record does not support Mack's contention that the mixers were transferred to R & W. At most, there was an informal arrangement between the parties whereby R & W would use the mixers and Excavation would retain ownership. Therefore, it is not necessary to address the question of standing.

■ Mack's second ground of appeal in Civil No. H–80–1611 is that the stay should have been lifted because the value of the mixers was declining rapidly. Whether a third party's rights are being injured by a decline in the value of collateral is certainly a factor to be considered by a bankruptcy court in deciding whether to continue a stay. *See, e. g., In Re Buckeye School Supplies, Inc.,* 16 Collier's Bankruptcy Cases 475 (S.D.Ohio 1978). Moreover, there was uncontradicted testimony that the mixers were declining rapidly in value because of poor maintenance. (Tr. II, 10–12, 24, 25, 38.) Judge Goldburn specifically so found in the findings of fact he filed along with his Order of May 9, 1980. However, it does not follow that it was error for the Bankruptcy Judge to continue the stay.

While he did find that the value of the mixers was declining rapidly, Judge Gold-

---

4. At oral argument, it was disclosed that Judge Goldburn originally stayed the effect of his Order of January 28, 1980, allowing Excavation to retain the mixers pending appeal. Upon finding a violation of the terms of the stay, he lifted

the stay as to three of the five, allowing Mack to reclaim them. Thus, in practical terms, this Court's decision now merely requires that the remaining two mixers be returned to Mack.

burn also found that the rate of the decline could be slowed by an improved maintenance program. He ordered that the mixers be made available for inspection by Mack and indicated that if maintenance continued to be inadequate he would consider increasing the required monthly payments.

A stay may be continued in derogation of the rights of a secured creditor if the latter is protected from loss by a requirement of periodic payments. *See, e. g., In Re Bermec Corp.*, 445 F.2d 367 (2d Cir. 1971). What Judge Goldburn did was simply to elaborate upon this principle by indicating that he would adjust the required payment if Excavation did not protect Mack's interest in the collateral by improved maintenance. Either by increased payments or by improved maintenance, Mack's interest in the collateral would be protected.

This Court does not find clearly erroneous Judge Goldburn's finding that better maintenance would preserve the collateral. Moreover, Mack has not convinced this Court that it was error as a matter of law for Judge Goldburn to fashion the particular remedy he did. This Court concludes that such a remedy falls within the Bankruptcy Court's broad power to fashion appropriate remedies. *See Continental Illinois National Bank and Trust Co. v. Chicago, Rock Island & Pacific Railway Co.*, 294 U.S. 648, 55 S.Ct. 595, 79 L.Ed. 1110 (1935); *cf.* 11 U.S.C. § 105 (1979) (new Bankruptcy Code).

After arguing that Judge Goldburn erred in finding that the mixers were necessary to Excavation's business and in allowing them to be retained despite their deteriorating condition, Mack next contends that he erred generally in allowing Excavation to use the stay provided by Chapter XI to avoid its obligations to secured creditors. While stays under Chapter XI were not meant to abridge the rights of secured parties, *see Matter of Bateman Financial Corp., supra* at 491, what is protected is not

so much specific rights of secured parties as the value of those rights. *See* 2 Collier on Bankruptcy ¶ 362.01 at 362–15 (15th ed. 1979). Any stay, no matter how meritorious, affects some right of secured parties. The critical question to be answered by a bankruptcy court in balancing the equities is whether, assuming no substantial risk of harm to the secured parties, the inconvenience to them is outweighed by the debtor's equity in the collateral and the necessity of the collateral to a successful arrangement. Judge Goldburn, after protecting Mack by requiring periodic payments, performed that balancing task, and came out in favor of Excavation. The record in this case does not lead this Court to conclude that in doing so he abused his discretion.

Mack relies on cases in which stays were lifted.[5] However, all of these cases are distinguishable on their facts. All of them involved findings either of no equity in the collateral or of a lack of necessity to the business. Most importantly, in each case the court found that the debtor was not seriously trying to carry out an arrangement but was merely using Chapter XI to hold secured creditors at bay. In each case, debtors sought to retain mortgaged real estate in the hope that improvements in the market might allow them to liquidate on more advantageous terms. There is nothing in the record before the Court in this case to support a claim of similar abuse.

■ Mack also argues that Excavation has transferred possession of the mixers to R & W in violation of the security agreement, and that by refusing to lift the stay, Judge Goldburn is allowing Excavation to use Chapter XI as a means of avoiding its obligations to secured parties. As indicated above, that Chapter XI was not meant to affect the rights of secured parties does not require the automatic lifting of a stay because of a breach of a security agreement such as a transfer of possession. In any event, this Court concludes that in this particular case the record supports the finding

5. *In Re The Red Carpet Corp., supra; Matter of Bateman Financial Corp., supra*; and *In Re Jenifer Mall Corp., supra.*

that the mixers, while being used by R & W, remained in the constructive possession of Excavation. They were parked on Excavation's job site. (Tr. II, 10.) They were registered in Excavation's name, (Tr. II, 22) and were being used on Excavation's job. (Tr. II, 57–58.)

It is true that there is testimony that the mixers were "in the custody and possession of R & W ...," (Tr. II, 58) and had R & W's name painted on them. Nevertheless, this Court concludes that this "possession," while it may have been technically a violation of the security agreement, is not a sufficiently egregious violation, in light of Judge Goldburn's provisions for Mack's security and the improved maintenance of the mixers, to warrant the conclusion that Excavation is abusing the privilege of a stay under Chapter XI at the expense of secured parties. Although adequate provision must be made for protecting the value of the secured party's interest, the paramount concern in a case of this sort is the successful rehabilitation of the debtor. The record here supports Judge Goldburn's conclusion that a rehabilitation was possible and that retention of the mixers was essential to it.

Support for Judge Goldburn's and for this Court's conclusion that a stay may be proper notwithstanding certain defaults under a security agreement is to be found in a case cited by Mack. In *In Re Gelormino Constr. Co.*, 7 Collier's Bankruptcy Cases 458 (W.D.Pa.1975), the court said:

> The Court informed the parties that it rejected the Plaintiff's contention that it was entitled to reclaim the equipment merely because its title thereto was protected on default and stated that if there was an equity therein which was not being impaired by the depreciation presently taking place and the Defendant could show that it was necessary for it to retain the same in its possession to remain a viable entity and had prospects for consummating a successful Arrangement, it would be permitted to retain it on payment of a reasonable amount monthly to protect the Defendant's right to be ultimately paid the balance due it .... *Id.* at 460.

■ Finally, in Civil No. H–80–1611, Mack challenges the figures and the arithmetic used by Judge Goldburn to calculate the payments Mack was entitled to for Excavation's retention of the mixers. Two of the specific figures challenged are the residual value of the mixers and their useful life. Judge Goldburn used a residual value of $30,000 and a useful life of twenty-seven months. Mack contends that a $24,000 residual value and an eighteen-month useful life should have been used. However, the record supports Judge Goldburn's findings of a longer useful life and a higher residual value on the assumption that the mixers would receive the improved maintenance he required. (Tr. II, 25, 26.) On this record, the Court cannot say that these figures were clearly erroneous.

Mack also contends that since there was no challenge to its evidence that a 12% add-on interest rate was appropriate, the 12% figure should have been used. Judge Goldburn used a figure of 10%. Mack's expert testified that his bank would charge 12% to finance similar equipment (Tr. II, 69), but he did not know what Mack actually had to pay for money (Tr. II, 71).

It appears that Judge Goldburn used the 10% figure to be consistent with his Order of January 28 pertaining to the trucks. In that Order, he had used a 10% add-on interest rate, and Mack did not challenge that ruling. Indeed, Mack itself provided the figure used in the form of testimony that that rate was fair. (Tr. I, 47–48.) Judge Goldburn's determination of the applicable interest rate is, under the circumstances, not clearly erroneous.

■ Finally, Mack claims that Judge Goldburn's arithmetic is wrong and that using his figures and formula, the correct result is a $3,744 payment per month, and not $3,150. Unfortunately, the Court cannot determine the correctness of Judge Goldburn's arithmetic because it has not been made clear to the Court, even after oral argument, what formula he used.

Mack contends that only one formula for calculating the monthly payments is supported by the record, namely that used by its witness. (Tr. II, 69–70.) *See* Reply Brief of Appellant at 5.[6] Using this formula and Judge Goldburn's figures for interest rate and useful life, Mack argues that the arithmetically correct result is $3,744, not $3,150. *See* Brief of Appellant at 9. Excavation concedes that Mack is correct as to the result to be reached using Mack's formula and Judge Goldburn's figures. *See* Brief of Appellee at 7. However, Excavation suggests that Judge Goldburn may have included in his formula some factor to account for the requirement under the U.C.C. that on disposition of secured collateral the surplus be distributed to the debtor. *Id.* at 7–8.

After considering the arguments of counsel, this Court concludes that there is substantial merit to Mack's position. However, on this record, the Court cannot determine whether an arithmetical mistake was made or whether some formula other than Mack's was used by Judge Goldburn. Accordingly, this case will be remanded to the Bankruptcy Judge for further findings concerning the monthly payments. If an arithmetical error were made, the figures should be corrected. If Judge Goldburn reached the $3,150 figure in some other way than by employing Mack's formula, findings in support of the result should be made.

### III

In Civil No. H–80–2143, Mack challenges Judge Goldburn's Order of May 9, 1980 which modified his Order of January 28, 1980 by changing the beginning date on which Excavation was obligated to make monthly payments to Mack. On May 9, 1980, the Order modified was on appeal to this Court. Mack argues that Judge Goldburn's jurisdiction over the case ended when the appeal to this Court was docketed. Excavation replies that Judge Goldburn's Order of May 9 did not modify his Order of January 28 in any material respect, but only clarified an ambiguity, and that a lower court retains jurisdiction to clarify its judgments even when they are on appeal.

This Court concludes that Judge Goldburn's Order of May 9, 1980 did not merely clarify his Order of January 28, 1980 but in fact substantially modified it. For a proper understanding of the effect which Judge Goldburn intended his Order of May 9 to have, it is necessary to examine in detail the events occurring between January 28 and May 9.

The Order of January 28 provided in part:

> [E]ffective November 8, 1979, the debtor shall pay unto the plaintiff, accounting from November 8, 1979, the sum of $38,500.00 per month . . . .

Following the entry of that Order, Excavation began paying Mack $38,500 monthly. It did not, however, immediately pay the amount owing for the back period from November 8, 1979 to January 28, 1980. Excavation did not regard the Order of January 28 as requiring an immediate lump-sum payment of the amounts past due. Rather, Excavation regarded its obligation to Mack for the use of the trucks during this period as being an expense of administration which would become due and payable pursuant to the provisions of a plan of arrangement. Excavation is not disputing that it still owes Mack $95,200 for the use of the trucks during this period. This was conceded at oral argument before this Court.

On the record here, this Court concludes that while the Order of January 28 did not specifically address the point, Judge Goldburn intended the amount owed for the period before his Order of January 28 to be payable following the entry of his Order. That this is the case is shown by a further Order of Judge Goldburn, filed March 24, 1980, in which he set a bond of $110,000 as a condition for staying his Order of January 28 pending appeal. The amount of the bond was premised on Judge Goldburn's finding that:

> A total of $202,200 having become due from Defendant to Plaintiff through

**6.** References to the Briefs are to those filed in Civil No. H–80–1611.

March 24, 1980 *by the terms of Orders of this Court* and only $107,000 in payments having been received [representing the monthly payments made *after* the Order of January 28] by Plaintiff ... Defendant continues to owe Plaintiff $95,200 under the Orders of this Court .... (emphasis added)

On May 9, 1980, Judge Goldburn entered the Order challenged here. For the purpose of lowering the supersedeas bond so that Excavation could afford to obtain a stay pending appeal, he eliminated in its entirety Excavation's obligation to pay the $95,200 due for the period from November 8, 1979 to January 28, 1980, thereby making Excavation current in its obligations to Mack under the appealed Order. Judge Goldburn, in his Order of May 9, provided:

> that the portion of the January 28, 1980 Order requiring payments of $38,500.00 per month accounting *from November 9, 1979 (sic) is vacated* and that the payments are to be due effective January 28, 1980. (emphasis added)

Clearly, Judge Goldburn intended to change his previous Order by eliminating the previous requirement that Excavation pay for the use of the trucks for the period from November 8, 1979 to January 28, 1980. He did not, as Excavation contends, merely clarify the date when that obligation was to be satisfied. That question has never been addressed by the Bankruptcy Court.

 This Court concludes that Judge Goldburn lacked jurisdiction to modify his Order of January 28, 1980 by entering the Order of May 9, 1980 at a time when an appeal was pending in this Court from the earlier order. Once an appeal has been taken from a bankruptcy court to a district court, the jurisdiction of the bankruptcy court terminates, just as the jurisdiction of a district court terminates on an appeal to a court of appeals. *Matter of Weis Securities, Inc.*, 5 Collier's Bankruptcy Cases 471 (S.D.N.Y.1975); *see Crateo, Inc. v. Intermark, Inc.*, 536 F.2d 862 (9th Cir.), *cert. denied*, 429 U.S. 896, 97 S.Ct. 259, 50 L.Ed.2d 180 (1976). Judge Goldburn erred in concluding that he had authority to make

a modification of the Order of January 28, 1980 under Bankruptcy Rule 805, which is similar to Rule 62(c), F.R.Civ.P. These rules allow injunctions or stays pending appeal. They do not allow modification of the order appealed from. *Lewis v. Tobacco Workers International Union*, 577 F.2d 1135 (4th Cir. 1978), *cert. denied*, 439 U.S. 1089, 99 S.Ct. 871, 59 L.Ed.2d 56 (1979).

Judge Goldburn's Order of May 9 modifying his Order of January 28 will therefore be reversed. Excavation owes Mack the full amount due for the period from November 8, 1979 until January 28, 1980. However, this ruling is without prejudice to the right of Excavation to apply to the Bankruptcy Court for further relief pursuant to Rule 60, F.R.Civ.P. (applicable here under Bankruptcy Rule 924). If such an application were filed by Excavation, the Bankruptcy Court would have to determine first whether it was proper at this late date under Rule 60. If so, that Court would next have to decide whether the debtor should pay the $95,200 due and owing Mack at one time (and if so the date for such payment) or whether the payment should be made in installments. This Court would again note that at oral argument Excavation conceded that it is obligated to pay to Mack the sums due from November 8, 1979 through January 28, 1980. The debtor merely disputes the timing for such payments.

In summary, the Order appealed in Civil No. H–80–719 will be affirmed. The Order appealed in Civil No. H–80–1611 will be affirmed in part and the case remanded. The Order appealed in Civil No. H–80–2143 will be reversed. Mack will be awarded costs in Civil Nos. H–80–719 and H–80–2143. Excavation will be awarded costs in Civil No. H–80–1611. Mack's request for attorney's fees and damages for delay in Civil No. H–80–719 will be denied. The Court cannot say that that appeal was entirely frivolous or brought in bad faith.

For the reasons stated, it is this 8th day of January, 1981, by the United States District Court for the District of Maryland,

ORDERED:

1. That in Civil No. H–80–719, the Order of the Bankruptcy Court of January 28, 1980 be and the same is hereby affirmed;

2. That in Civil No. H–80–1611, the Order of the Bankruptcy Court dated May 9, 1980 be and the same is affirmed in part and remanded for the entry of findings consistent with this Memorandum and Order; and

3. That in Civil No. H–80–2143, the further Order of the Bankruptcy Court of May 9, 1980 be and the same is hereby reversed.