In re J. M. FIELDS, INC., Food Fair, Inc. et al., Debtors.

Bankruptcy Nos. 78 B 1764–78 B 1773.

United States Bankruptcy Court, S. D. New York.

Feb. 3, 1981.

Levin & Weintraub, New York City, for debtors.

Moe Bordwin, New York City, for Stone East Associates.

Sherman & Citron, New York City, for T–Warehouse Corp.

Otterbourg, Steindler, Houston & Rosen, New York City, for Creditors Committee.

Dilworth, Paxson, Kalish, Levy & Kauffman, Philadelphia, Pa., for Independence Hall Parking, Inc.

### MEMORANDUM & ORDER

JOHN J. GALGAY, Bankruptcy Judge.

The present controversy arises out of one of the many sales by Food Fair of leases and realty which have been an integral part of this reorganization proceeding. By an order to show cause dated November 19, 1980, Food Fair seeks a declaration by this Court that the contract of sale of the lease of the location, known as the Philadelphia Warehouse has been validly and legally terminated. Additionally Food Fair seeks an order restraining and enjoining T Ware-

house Corp., the contract vendee, from soliciting leases or subleases of the premises. T Warehouse has cross moved for an order holding Food Fair in contempt of this Court, directing specific performance of the sales contract, enjoining Food Fair from violating this Court's October 3, 1980 order, enjoining Food Distribution Center (the landlord) from interfering with the sales contract, and ordering Food Fair and the Landlord to appear for depositions.

A hearing on these motions was held on November 25, 1980. After consideration of the testimony of that hearing and of the prior hearings relating to the sale of the lease of the Philadelphia Warehouse, of all the papers filed and submitted, and of the relevant law, the relief requested by Food Fair is hereby granted.

Some limited background of the Food Fair proceedings is required to put the instant decision into a proper perspective. On October 2, 1978 Food Fair and J. M. Fields filed petitions for an arrangement under Chapter XI, Section 322 of the Bankruptcy Act. At the time of the filing the corporate complex consisted of approximately 490 food supermarkets, 79 discount department stores and food distribution centers, principally in New York, Pennsylvania, New Jersey, Maryland, and Florida. As part of its overall plan of arrangement all of the Fields operations, and a number of the supermarket properties were sold pursuant to orders of this Court.

Food Fair marketed its lease dated February 23, 1960 between itself and Food Distribution Center for premises located at Paterson Avenue, 11th Street and Darrien Street and I–95, Philadelphia, Pennsylvania (Philadelphia Warehouse). On September 9, 1980, after adjournments from August 6, 1980, a hearing was held before this Court to consider offers for the leasehold subject to the terms and conditions of the real estate sales contract. T Warehouse was the highest bidder at that hearing.

Prior to confirmation of the sale, a potential bidder, Richard Bernstein, moved for an order denying confirmation of the sale and reopening the bidding. As Bernstein's offer was conditioned upon the approval by the Landlord of certain modification in the lease, the application was denied.

An order authorizing the assignment of the leasehold to T Warehouse was settled on notice for October 3, 1980. Bernstein again moved for a denial of the confirmation of the sale and for a reopening of the bidding. The application was again denied and an order was signed on the same day authorizing Food Fair to sell its interest in the lease ". . . upon the terms and conditions set forth in the Real Estate Sales Contract annexed to the Order to Show Cause (as amended by consent) and upon the terms announced in open Court." (October 3 Order at paragraph 1). The contract was executed on October 8.

Also on October 8, 1980 the Landlord filed a notice of appeal of the October 3 order. The Landlord has contended that the lease was null and void and therefore Food Fair could not transfer any interest in the property. On that same date application was made by the Landlord for a stay pending the appeal on the grounds that the appeal would become moot absent such stay. On October 9, an order was signed granting the stay provided that a bond in the sum of $1,750,000 was filed. In accord with that order, as amended on October 14 and 21, an irrevocable letter of credit from the Girard Bank was duly filed on October 24, 1980.

On November 7, 1980, Food Fair sent a letter to T Warehouse stating that the contract of sale was terminated for failure to close by November 5 as contemplated under the contract. Food Fair returned T Warehouse's down payment as required under Paragraph 17 of the contract of sale. On November 12, T Warehouse sent a letter to Food Fair claiming that Food Fair did not have the right to terminate the contract, and returning the deposit check which Food Fair had sent.

At that point, both parties filed orders to show cause asking this Court to determine whether or not the contract had been validly terminated. Food Fair contends that, as the maintenance of the property is costing

approximately $3,000 per day and any closing is precluded by the stay order, time is of the essence and the contract is terminated. T Warehouse contends that the stay order prevents any termination of the contract, and Paragraph 17 of the contract limiting Food Fair's liability in the event that the closing could not take place was not activated because of the stay. Additionally, T Warehouse claims that it would be inequitable for Food Fair to take advantage of the stay order to terminate the contract as time as not of the essence according to the terms of the contract itself, and T Warehouse has spent in excess of $100,000 in reliance on the October 3 order.

■ Before this Court can resolve the dispute between the parties, there must be a determination of whether this Court retains jurisdiction over the matter after the notice of appeal of the October 3 order was filed by the Landlord. Section 311 of the Bankruptcy Act, which governs this case, vested this Court with exclusive jurisdiction of the debtor and his property, wherever located. The appeal of the October 3 order divested this Court of its jurisdiction only with respect to the questions raised and decided in that order. The jurisdiction which this Court has over all other matters is in no way impaired. See *U. S. v. Crescent Amusement Co.*, 323 U.S. 173, 177, 65 S.Ct. 254, 256, 89 L.Ed. 160 (1944); *Compania Espanola de Petroleos, S. A. v. Nereus Shipping, S. A.*, 527 F.2d 966, 972 (2d Cir. 1975).

The October 3 order authorized Food Fair to sell, transfer and assign its interest in the lease of the Philadelphia Warehouse to T Warehouse. Food Distribution Center appealed on the grounds that Food Fair had no right to transfer any interest in the premises, and that T Warehouse was not a proper assignee. The motions presently before this Court do not deal with any authority to transfer, but simply with whether there has been a breach of contract which entitles Food Fair to terminate the transaction. Paragraph 20 of the contract specifically retained jurisdiction in this Court to "resolve all disputes in connection with this Contract." By its own terms the stay order granted to the Landlord was directed solely toward "any action by Food Fair, Inc., debtor and debtor-in-possession herein, and T Warehouse Corp., *pursuant to* the order being appealed from . . ." (Emphasis added). Although the stay does enjoin the transfer *to* T Warehouse, it in no way prevents the cancellation of that transfer.

Since this Court does have jurisdiction to determine whether Food Fair had the right to terminate the contract, this Court will first determine whether T Warehouse failed to fulfill its part of the contract.

Food Fair contends that a letter of September 29, 1980 from Mr. Karasik of Sherman & Citron, as attorneys for T Warehouse, to Mr. Mann of Levin & Weintraub, as attorneys for Food Fair, was part of the contract and made time of the essence. In relevant part the letter states that

T Warehouse agrees that if at the end of 30 days after the entry of an order confirming the sale of the Leasehold to it, T W has not obtained all necessary approvals from FDC [Food Distribution Center], then the Debtor shall have the option to terminate any agreement of sale between the Debtor and T W concerning the Leasehold which they may have entered pursuant to said order. In the event the Debtor exercises its termination option, it shall return T W's deposit, and thereafter, neither the Debtor nor T W shall have any further liability under the agreement of sale which shall then be terminated.

The order confirming the sale of the leasehold to T Warehouse was entered on October 6, 1980. By November 5, T Warehouse had failed to obtain the necessary approvals from the Landlord in spite of efforts to do so as evidenced by a letter dated November 3, 1980 from Mr. Jacovinci of Dilworth, Paxson, Kalish & Levy, as Philadelphia counsel to T Warehouse, to Michael Dougherty of Food Distribution Center.

■ T Warehouse contends that the September 29 letter merged into the contract of sale which was executed on October 8, 1980. Paragraph 21 of the contract is a standard merger clause and Paragraph 22

prohibits oral modifications of the contract. It is undisputed that under New York law there is an "established rule of law that a written contract merges all prior and contemporaneous negotiations in reference to the same subject." *Fowler v. Metropolitan Life Insurance Co.*, 116 N.Y. 389, 397, 22 N.E. 576, 578 (1889). That principle has maintained its validity over the years. See *John W. Cowper Co., Inc. v. CDC-Troy, Inc.*, 50 A.D.2d 1076, 376 N.Y.S.2d 754 (1976); *Lee v. Industrial Laundry Mach. Co., Inc.*, 261 A.D. 741, 27 N.Y.S.2d 202 (1941). But in this case there was no merger.

■ Section 313(2) of the Bankruptcy Act, provides that any lease or sale of the property of the debtor must be on terms and conditions as approved by the Court. Paragraph 20 of the contract of sale for the lease expressly stated that the terms of the sales contract were subject to the approval of the Bankruptcy Court. The October 3 order, as previously quoted, authorized the execution of the sales contract "as amended by consent and *upon the terms announced in open Court.*"

A review of the transcript of that date clearly reveals that the September 29th letter was made a part of the contract. Mr. Mann, as counsel to Food Fair, began at page 4 discussing certain changes to be made in the contract annexed to the order to show cause.

> Now, Your Honor, there are two changes which are to be made which have been agreed upon between the assignee of the lease and Food Fair counsel in connection with the order.
>
> If Your Honor has the order in front of him, the first change which is to be made is in a letter which is annexed to the proposed order dated September 29, 1980...
>
> As a result of our conference with counsel, counsel who is sitting on my right, has agreed that a sentence which is embodied in a letter of September 29, 1980 may be excised from the offer.
>
> Is that correct, Mr. Karasik?

Mr. Karasik for T Warehouse replied, "That is correct." The only logical deduction that can be made from this exchange in open Court is that the September 29 letter became part of the contract of sale and became an additional condition of that sale as authorized by this Court. Therefore, as T Warehouse failed to obtain the approval of the Landlord within the prescribed time period, Food Fair had an option to terminate the contract which it validly exercised by the letter of November 7 and return of the deposit.

■ T Warehouse argues that such termination of the contract is inequitable as somehow enriching Food Fair while depriving T Warehouse of the benefit of its bargain in addition to the $100,000 spent in anticipation of the closing. T Warehouse overlooks the fact that this sale was conducted under the auspices of this Court in order to further the reorganization of Food Fair. The Court is required to determine whether a sale of debtor's property is to the advantage of the estate and whether it will aid the ultimate objective of the proceeding. *In re Whitman Center, Inc.*, 285 F.Supp. 199, 213 (C.D.Cal.1968). Food Fair has claimed that maintenance of the property costs the estate approximately $3,000 per day. T Warehouse has not disproved these figures. Requiring indefinite expenditure pending a decision of the District Court on the appeal of the October 3 order would represent a drain on the assets of the estate to the detriment of Food Fair's creditors, those to whom the debtor-in-possession owes a duty to preserve and protect his property for their benefit. See 8 Collier on Bankruptcy (14th ed.) ¶ 6.32.

Based on the foregoing, the contract of sale for the lease of the Philadelphia Distribution Center to T Warehouse has been validly and legally terminated, and T Warehouse and any of its agents or servants is hereby enjoined from holding itself out as lessee of the premises and from soliciting any leases or subleases therefor.

The counter motions of T Warehouse Corp. are hereby denied.

It is so ordered.