In the Matter of Theodore V. OLSON and Sandra Ann Olson, Debtors.

O'NEILL PRODUCTION CREDIT ASSOCIATION, Plaintiff-Appellant,

v.

Theodore V. OLSON and Sandra Ann Olson, Defendants-Appellees.

No. BK 82–0–0379.
No. CV 82–0–334.

United States District Court,
D. Nebraska.

July 23, 1982.

Jerrold L. Strasheim, Timothy V. Haight, Omaha, Neb., for plaintiff-appellant.

William L. Needler, Chicago, Ill., for defendants-appellees.

## MEMORANDUM AND ORDER

BEAM, District Judge.

This matter comes before the Court on the application for leave to appeal[1] from the Bankruptcy Court.[2] The plaintiff-appellant, O'Neill Production Credit Association (PCA), has moved this Court pursuant to Rule 805 of the Rules of Bankruptcy Procedure for an order staying the Bankruptcy Court's order of July 13, 1982.

The relevant chronology of events is uncontroverted and as follows:

1. March 1, 1982: The defendants-appellees, Theodore V. Olson and Sandra Ann Olson (Ted Olson), file a voluntary petition under Chapter 11 of the Bankruptcy Code,

1. This matter is before the Court pursuant to § 405(c)(1)(C) of the Bankruptcy Reform Act of 1978, Pub.L.No. 95–598, 92 Stat. 2685 (uncodified), *reprinted in* [1978] *U.S.Code Cong. & Ad.News* 5787. Also pertinent is 28 U.S.C. § 1334(b), which specifically provides for District Court jurisdiction to review interlocutory Bankruptcy Court orders and decrees. While technically not effective until April 1, 1984, § 405(c)(2) of the Bankruptcy Reform Act of 1978, *supra*, provides that, during the "transi-

tion period" (October 1, 1979, through March 31, 1984), appeals to the District Courts of interlocutory orders entered by the Bankruptcy Courts shall be governed by the future 28 U.S.C. § 1334(b).

2. The Honorable Richard Stageman, United States Bankruptcy Judge for the Southern District of Iowa, presiding by special assignment in the United States Bankruptcy Court for the District of Nebraska.

11 U.S.C. §§ 1101 to 1146. The filing of the Chapter 11 petition triggers the automatic stay provisions of § 362(a) of the Code. This precludes PCA from foreclosing its prior security interest in some 530,000 bushels of 1981 grown corn owned by Ted Olson.

2. May 1, 1982: The Bankruptcy Court conducts a hearing on PCA's request for relief from the automatic stay, pursuant to § 362(d) of the Code.

3. May 4, 1982: The Bankruptcy Court files a memorandum opinion and enters an order which, in pertinent part, modifies the automatic stay so as to permit PCA to foreclose its security interest in the 1981 corn. This deprives Ted Olson the use of the cash proceeds to operate his business within the Chapter 11 proceedings.

4. May 4, 1982: Ted Olson immediately requests the Bankruptcy Court to reconsider its decision.

5. May 11, 1982: A formal order is entered denying the above-referenced motion for reconsideration.

6. May 13, 1982: Ted Olson files a "Notice of Appeal to District Court" with the Clerk of the Bankruptcy Court relative to the Bankruptcy Court's orders of May 4, 1982, and May 11, 1982.

7. May 19, 1982: The Bankruptcy Court signs an order for stay pending appeal of its order of May 4, 1982, but allows the parties, as part of the order for stay, to proceed to sell the 1981 corn and place the proceeds in an escrow account pursuant to written stipulation.

8. June 9, 1982: Ted Olson files a "Designation of Record on Appeal" with the Clerk of the Bankruptcy Court. This designation includes a section entitled "Issues Presented for Review" relative to the Bankruptcy Court's orders of May 4, 1982, and May 11, 1982.

9. June 25, 1982: The Bankruptcy Court signs an order approving an executed agreement between PCA and Ted Olson whereby the 1981 corn is to be sold and the proceeds escrowed, as contemplated by the original stay order of May 19, 1982. (This sale and escrow apparently has been or is in the process of being completed.)

10. July 9, 1982, and July 12, 1982: The Bankruptcy Court, by way of conference calls managed from Davenport, Iowa, confers with interested parties relative to Ted Olson's "Emergency Petition" to make various expenditures and to grant certain liens and, as pertinent to the instant appeal, to invade the 1981 corn proceeds escrow fund for current expenditures totalling $10,000.00 for production of Ted Olson's 1982 corn crop.

11. July 13, 1982: An order is entered by the Bankruptcy Court granting the emergency relief requested. In regard to invasion of the escrow account, $5,000.00 of the funds to be withdrawn is chargeable to PCA (the other $5,000.00 is chargeable to Ted Olson Enterprises, Inc.). The Bankruptcy Court notes but does not discuss in its order PCA's contentions that, due to the previous appeals brought by Ted Olson, the Bankruptcy Court lacks subject matter jurisdiction, and even assuming that the Court has jurisdiction, that the telephone conference procedure is improper.

12. July 13, 1982: Ted Olson's appeal of the Bankruptcy Court's two May, 1982, orders is docketed with the Clerk of the District Court (see CV 82–0–330). (Leave of the U.S. District Court to docket this appeal has not yet been granted.)

13. July 14, 1982: PCA files the instant appeal (CV 82–0–334) with the Bankruptcy Court and files a motion for stay with the Clerk of the District Court and oral argument is conducted immediately thereafter. (Leave of the U.S. District Court to docket this appeal has not yet been granted.)

◼ PCA has articulated three major arguments in support of its motion for a stay of the Bankruptcy Court's order of July 13, 1982, pending further appeal. First, PCA points out that Ted Olson's appeal of the Bankruptcy Court's two May, 1982, orders covers all issues relating to Ted Olson's use of the cash collateral represented by the escrow fund. PCA argues that, upon filing of said notice of appeal, the Bankruptcy

Court lost its subject matter jurisdiction over those issues and thus lacked jurisdiction when it purported to modify its previous orders on July 13, 1982. Second, PCA maintains that, even assuming that the Bankruptcy Court still had jurisdiction on July 13, 1982, the telephone conference procedure used to modify the previous stay orders was deficient under the Code's provisions for "notice and a hearing" (11 U.S.C. § 102), as well as from a broader standpoint of procedural due process. Third, in the event that the jurisdictional and procedural arguments fail, PCA also urges that the use of the $5,000.00 in which it has an interest somehow offends notions of substantive due process. For the reasons explained in more detail below, the Court respectfully concludes that the Bankruptcy Court lacked jurisdiction over the pertinent issues decided on July 13, 1982, and that, thus, its order modifying the previous stay conditions must be vacated, in part. This conclusion obviates the need to address PCA's other contentions.

The jurisdictional question in this case is not a simple one. The Court therefore fully sympathizes with the plight of the Bankruptcy Court which, as a practical matter, was forced to resolve Ted Olson's "Emergency Petition" on short notice. The Court is also mindful of the fact that the Bankruptcy Judge is sitting in this District by special designation in addition to his regular duties in the Southern District of Iowa, and that his assignment to this District was precipitated in no small measure by this Court's ruling on a recusal matter on April 20, 1982 (see CV 82–0–178). Nonetheless, this Court is bound to fully and independently review the critical legal question involved and, having done so, concludes that the Bankruptcy Court lacked jurisdiction over the relevant issues on July 13, 1982.

A threshold question in this case is whether the Bankruptcy Court's orders of May 4, 1982, and May 11, 1982, are interlocutory or final. By definition, all orders which modify injunctions are considered interlocutory in nature. *See* 28 U.S.C. § 1292(a)(1); 9 J. Moore, B. Ward & J. Lucas, *Moore's Federal Practice* ¶¶ 110.17 &

110.19 (2d ed. 1982) [hereinafter cited as *Moore's Federal Practice*]. In the specific context of bankruptcy, most (but certainly not all) courts and commentators contend that appeals from trial court orders relative to a § 362 stay are interlocutory and that, accordingly, leave to appeal must be obtained from the appellate court. *E.g., Roslyn Savings Bank v. Vaniman International, Inc.,* 8 B.R. 751, 752 (D.C.E.D.N.Y.1981). *See* 1 L. King, *Collier on Bankruptcy* ¶ 3.03[7][e], at 3–312 (15th ed. 1982). Under the former Bankruptcy Act such appeals were likened to appeals of right under 28 U.S.C. § 1292(a)(1) (which provides as a matter of right appellate review of trial court orders granting, modifying, or dissolving a preliminary injunction) and accordingly, the appellate court seldom, if ever, refused to hear such appeals. *Roslyn Savings Bank v. Vaniman International, Inc., supra,* 8 B.R. at 752. To date, this approach has evidently remained the same under the new Bankruptcy Code. *Id.*

Assuming that the Bankruptcy Court's orders of May 4, 1982, and May 11, 1982, impacting the automatic stay, are interlocutory, the next issue involves the jurisdictional effect, if any, upon the Bankruptcy Court as a result of Ted Olson's filing of a notice of appeal on May 13, 1982. In the context of conventional civil litigation involving appeal of an interlocutory order appealable as a matter of statutory right (*e.g.,* an order granting, modifying, or dissolving a preliminary injunction), it is well-established that a properly filed notice of appeal immediately acts to transfer jurisdiction from the District Court to the Circuit Court of Appeals with regard to those matters specifically involved in the appeal. Thus, the District Court is divested of jurisdiction to proceed with such matters. *See Janousek v. Doyle,* 313 F.2d 916, 920 (8th Cir. 1963). However, the question of the effect of a notice of appeal filed from an interlocutory order not appealable as a matter of statutory right remains uncertain. 9 *Moore's Federal Practice, supra,* ¶ 203.11, at 3–51 (2d ed. 1982). Under the language of 28 U.S.C. § 1334(b), an argument can be

made that, in a situation involving appeal of an 11 U.S.C. § 362 order, jurisdiction is transferred to the appellate court only at such time as that court grants leave to bring the appeal. Nonetheless, the rule expressed in the *Janousek* case (which case, it will be recalled, at least suggests that jurisdiction is transferred upon the mere filing of an application for leave to appeal) appears to apply in bankruptcy appeals involving the automatic stay provisions of § 362 of the Code. *See In re Bialac,* 15 B.R. 901, 903 (Bkrtcy. 9th Cir. 1981); *In re J. M. Fields, Inc.,* 8 B.R. 638, 641 (Bkrtcy.S.D.N.Y.1981).

■ To be more specific, under the bankruptcy law, the appeal of an interlocutory order is not an appeal of right. Accordingly, leave of the district court or appellate panel is required. See 28 U.S.C. §§ 1334(b) & 1482(b), respectively. Therefore, even though labeled as a "notice of appeal," the Ted Olson filing of May 13, 1982, must actually be considered an application for leave to appeal assuming, as we have, that the order in question is interlocutory in nature. *See* Rule 8004(d) of the Suggested Interim Bankruptcy Rules.[3] Quite simply, we are faced with the need to determine which court has jurisdiction pending a ruling by the appellate court on the application for leave to appeal. As earlier indicated, an argument can be made that the appellate court does not obtain jurisdiction until it permits the appeal to be docketed per Rule 8004(c). The pertinent statute, 28 U.S.C. § 1334(b), states:

> The district courts ... shall have jurisdiction ..., *but only by leave of the district court to which the appeal is taken.*

*Id.* (emphasis added). This Court concludes that the more appropriate rule, and one reasonably contemplated by the statute, is a rule which vests jurisdiction in the appellate court at the time an application for leave to appeal an interlocutory bankruptcy court order is filed, provided that such fil-

ing is accomplished in a timely manner. *See generally Janousek v. Doyle, supra,* 313 F.2d at 920.

Unfortunately, it appears that there are no published opinions on point. The most likely source for precedent would seem to be decisions, if any, dealing with 28 U.S.C. § 1292(b) wherein a Circuit Court of Appeals must grant permission to take an interlocutory appeal. However, the occurrence of interim actions by the trial court after the filing of an application for leave to appeal has apparently not created litigation. This is not surprising since the trial court must, as a condition precedent, certify in writing that such an appeal may materially advance the ultimate termination of the litigation. Thus, it is not likely that a trial court will proceed to modify a specific interlocutory order which it has already certified for appeal.

Commentators on jurisdiction are in agreement that "[t]he question of the effect of a notice of appeal filed from an interlocutory order not appealable by statute ... is clouded." *See* 9 *Moore's Federal Practice, supra,* ¶ 203.11, at 3–51. However, Professor Moore points out that even when an appeal is obviously improper, the trial court may not strike it or quash it because the issue of jurisdiction is decided by the appellate court. *Id.* In order to prevent the disruption of a trial proceeding by an improvident appeal, most courts have held that the trial court may simply ignore a notice of appeal naming an obviously non-appealable order. *Id.* (citing *Arthur Andersen & Co. v. Finesilver,* 546 F.2d 338, 340–41 (10th Cir. 1976), *cert. denied,* 429 U.S. 1096, 97 S.Ct. 1113, 51 L.Ed.2d 543 (1977)). However, in this matter, we are not dealing with an obviously non-appealable order. We have, instead, an order very likely to be deemed appealable by the appellate court. Upon the filing of the application, the appellate court has the issue of appeal or no appeal before it for consideration. Jurisdiction, then, at least for that limited purpose,

---

**3.** These suggested rules, promulgated by the Advisory Committee on Bankruptcy Rules of the United States Judicial Conference, have been adopted in the District of Nebraska. Local Bankruptcy Rule B–1.

is in the appellate court. To find that the trial court retains jurisdiction of the issues raised in the application for leave to appeal during such period of consideration could, in this Court's view, create a chaotic situation.

A rule that jurisdiction transfers immediately upon the filing of the application for leave to appeal is supported in this case by two further considerations. First, Rule 8004(a) & (c) of the Suggested Interim Bankruptcy Rules indicates that an application for leave to appeal also serves as a notice of appeal if leave is ultimately granted by the appellate court. In effect, the filing of an application is also a "notice of appeal" subject only to an order permitting the appeal to be formally docketed by the Clerk of the appellate court. *See* Rule 8004(d). Second, the matter before this Court is in the nature of injunction or modification of injunction and more nearly fits the type of case contemplated by 28 U.S.C. § 1292(a)(1). As earlier indicated, a notice of appeal from an order modifying an injunction would automatically shift the jurisdiction to the appellate court. There appears to be no good reason to apply a different test to an order modifying the automatic stay engendered by § 362(a) of the Bankruptcy Code. As also earlier pointed out, past practice under the old bankruptcy law dictates such a result.

Even if an analogy of 28 U.S.C. § 1334 to 28 U.S.C. § 1292(b), rather than § 1292(a)(1), is more appropriate, the commentators apparently have construed the language in § 1292(b) to the effect "that application for an appeal . . . shall not stay proceedings in the district court . . ." as retaining jurisdiction in the trial court of only those matters not specifically within the subject matter of the interlocutory appeal. *See* 9 *Moore's Federal Practice, supra,* ¶ 203.11, at 3–55.

Returning to the facts of the case at bar, it is noteworthy that Ted Olson's counsel has at no time disputed that the Bankruptcy Court's order of July 13, 1982, amounts to a substantial modification of the previous order entered on May 4, 1982. That is, as of May 4, 1982, PCA was given the right to foreclose its security interest in 530,000 bushels of 1981 corn belonging to Ted Olson. This right to proceed to foreclose was, however, stayed by the Bankruptcy Court pending the appeal of Ted Olson, pursuant to Rule 805 of the Rules of Bankruptcy Procedure. While the corn was later sold and the proceeds escrowed, pursuant to the terms and conditions of the Rule 805 order of stay, PCA was essentially fully protected as to such funds pending only the possible success of Ted Olson's appeal in this Court. In contrast, as of July 13, 1982, $5,000.00 of the escrowed money in which PCA asserts an interest was exposed to being invested in Ted Olson's 1982 corn crop and thus obviously very much at risk.[4] Thus, the Bankruptcy Court's order of July 13, 1982, clearly goes beyond a mere clarification of its May 4, 1982, order which clarification, it appears, would be permissible. *See Excavation Construction, Inc. v. Mack Financial Corp.,* 8 B.R. 752, 760 (D.Md.1981).

The foregoing establishes that the Bankruptcy Court lacked subject matter jurisdiction on July 13, 1982, when it substantially modified its interlocutory order of May 4, 1982, for the reason that jurisdiction was transferred to this Court by virtue of the filing of Ted Olson's notice of appeal on May 13, 1982.[5] Lacking jurisdiction, the

---

**4.** Ted Olson claims that he has secured PCA's interest by offering PCA fifty percent of the profits from the 1982 corn crop. PCA contends, on the other hand, that production costs will exceed the value of the 1982 harvest and that there will be no profit in which to share.

**5.** During oral argument on this appeal, there was some discussion regarding the possible ramifications of a ruling that jurisdiction was transferred from the Bankruptcy Court to the District Court on May 13, 1982. It will be recalled that the Bankruptcy Court entered an order on May 19, 1982, staying its orders of May 4 and 11, 1982, pending Ted Olson's appeal. In granting the stay, though, the Bankruptcy Court allowed the parties, pending conclusion of the appeal, to proceed to sell the 1981 corn and place the proceeds in escrow pursuant to stipulation. On June 25, 1982, the Bankruptcy Court entered an order approving an actual agreement between PCA and Ted Olson as to the sale of the corn and escrow of the proceeds.

Bankruptcy Court's order of July 13, 1982, must be vacated.[6] Not until this Court decides Ted Olson's prior appeal (CV 82-0-330) may the Bankruptcy Court modify its order dealing with the automatic stay, at least to the extent of modifying provisions of the order involving the 1981 corn crop. Because of the obvious exigencies present in this matter, the Court will make every reasonable effort to work with counsel toward expeditious conclusion of that appeal.[7]

The Court's jurisdictional ruling here should not be construed generally as inhibiting the Bankruptcy Court's broad remedial powers under Chapter 11 to facilitate continued cultivation of Ted Olson's 1982 corn crop. Nor should this ruling be specifically interpreted as foreclosing the Bankruptcy Court from continuing its efforts to re-open Ted Olson's line of supply of propane fuel or other products or services necessary to grow and harvest the 1982 corn crop. How these tasks may be best accomplished is, of course, a matter within the Bankruptcy Court's particular expertise. It appears to this Court, though, that with regard to the propane supply problem, certain planning alternatives remain open.

As implied in the Bankruptcy Court's order of July 13, 1982, (at page 3, paragraph 6), Ted Olson's principal propane supplier, Thermogas, Inc. of Des Moines, Iowa, will re-establish supply if "certain guarantees" are made. Ted Olson apparently is prepared to grant Thermogas a security interest in his 1982 growing crops. As opposed to invasion of the 1981 corn escrow fund, there appears to be no reason why Thermogas or any other supplier could not obtain the necessary guarantees by and through a lien on the growing crop on a relatively expedited basis. With the permission of the Bankruptcy Court, and upon the mere unilateral filing of appropriate notices, the propane supplier would appear to be entitled to a "pretroleum products lien" in the 1982 crops under Neb.Rev.Stat. §§ 52-901 to 52-904 (Reissue 1978). Such a lien would appear to be superior to virtually all prior security interests in the 1982 crops. See Neb.Rev. Stat. (U.C.C.) § 9-310 (Reissue 1980). Alternatively, it appears that Ted Olson could, with the permission of the Bankruptcy Court, execute a written security agreement in favor of the propane or other similar supplier covering the 1982 crops. See Neb.Rev.Stat. (U.C.C.) § 9-203 (Reissue 1980). This security interest would appear to have priority over most, if not all, earlier security interests involved in this proceeding. See Neb.Rev.Stat. (U.C.C.) § 9-312(2) (Reissue 1980). See generally J. White & R. Summers, *Uniform Commercial Code* § 25-6 (1972). If implemented on an expedited basis either of these approaches should give Ted Olson the required propane supply and thus accommodate the important rehabilitative provisions of Chapter 11, while at the same time protecting PCA from unwarranted risk, a concern which was discussed at length in the Bankruptcy Court's memorandum decision of May 4, 1982.

Ted Olson's counsel has asserted that, if the Bankruptcy Court's order of July 13, 1982, is jurisdictionally deficient, then perhaps its orders of May 19, 1982, and June 25, 1982, are deficient too. This Court disagrees. That is, notwithstanding the notice of appeal filed by Ted Olson on May 13, 1982, the Bankruptcy Court had the authority on May 19, 1982, to make provisions for a stay pending appeal under Rule 805 of the Rules of Bankruptcy Procedure. It further appears that the Bankruptcy Court had authority on June 25, 1982, when it did no more than approve a natural outgrowth or extension of its original stay. Neither of the orders relative to the stay pending appeal amounted to a modification of the substantive provisions of the § 362(d) order entered on May 4, 1982.

Of course, the validity of the stay orders is not before the Court in the instant appeal. If the issue were raised, though, this Court would be hard pressed to conclude that the stay orders are jurisdictionally deficient.

**6.** This Court hastens to add that paragraphs 1, 2, 4, and 5 of the Bankruptcy Court's July 13, 1982, order are not involved in the instant appeal and, therefore, should not be considered affected by this appellate decision.

**7.** By separate order executed contemporaneously herewith, the Court shall grant Ted Olson leave to bring the appeal of the Bankruptcy Court's two May, 1982, orders docketed at CV 82-0-330.

Given the somewhat convoluted procedural posture of this case, the Court deems it appropriate to summarize how things currently stand. The practical effect of the Court's ruling, in vacating the Bankruptcy Court's order of July 13, 1982, is to re-establish, with regard to the 1981 corn crop, the case status as of June 25, 1982. Thus, the automatic stay stands lifted or modified so as to allow PCA to foreclose its security interest in Ted Olson's 1981 corn crop, the sale proceeds of which have now been or are being escrowed pending appeal. This modification, in turn, has been and remains stayed by the Bankruptcy Court order of May 19, 1982, and the matter of the 1981 corn crop will be held in status quo until this Court resolves Ted Olson's appeal (CV 82-0-330) of the Bankruptcy Court's two May, 1982, orders. That appeal will be resolved as soon as reasonably possible. Finally, in vacating the July 13, 1982, order and remanding this case, the Court in no way intends to restrict the prerogatives of the Bankruptcy Court with regard to the ongoing administration of the Ted Olson Chapter 11 proceedings except, of course, to the extent of preventing substantial modification of the relief granted to PCA on May 4, 1982, insofar as the 1981 corn crop is concerned.

In consideration of the foregoing,

IT IS HEREBY ORDERED:

1. That, in accordance with Rule 8004 of the Suggested Interim Bankruptcy Rules, O'Neill Production Credit Association is granted leave to bring the instant appeal;

2. That page five (5), paragraph three (3) of the Bankruptcy Court's order of July 13, 1982, is reversed and vacated; and

3. That this matter is remanded to the Bankruptcy Court with instructions to proceed in accordance with the above Memorandum decision.